## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, a New Jersey corporation, Plaintiff, | ) ) ) ) ) |
| vs. | | ) ) |
| 1. | SECURITY DESIGNERS, INC. dba RAIN DANCE SPRINKLER CO. an Oklahoma corporation, Defendant, | ) ) ) ) ) |
| 2. | KORNHAAS CONSTRUCTION, INC. an Oklahoma corporation, Defendant, | ) ) ) ) |
| 3. | NOBLE ENERGY, INC. an Oklahoma corporation, Defendant, | ) ) ) ) |
| 4. | CENTRAL MUTUAL INSURANCE COMPANY, an Ohio corporation, Defendant, | ) ) ) ) |
| 5. | J.C. YEATTS, INC., an Oklahoma corporation, Party in interest, | ) ) ) ) |
| 6. | JOHN YEATTS, Oklahoma citizen, Party in Interest, | ) ) ) |
| 7. | JOSE S. ROMO & MARIA ROMO, Oklahoma citizens, Parties in Interest, | ) ) ) ) |
| 8. | JOSE ROMO & SOCORRO ROMO, CO-TRUSTEES OF THE ROMO FAMILY TRUST DATED APRIL 7, 2010, Party in Interest, and | ) ) ) ) |

Case No.: <u>CIV-18-929-HE</u>

1

9.      KIRKSEY ARCHITECTS, INC.        )
        a Texas corporation,            )
        Party in Interest               )

## COMPLAINT

Plaintiff, Mesa Underwriters Specialty Insurance Company ("MUSIC"), states:

1.      This is a declaratory judgment action to determine whether MUSIC owes a duty to further defend or a duty to indemnify Defendants Security Designers, d/b/a Rain Dance Sprinkler Co. ("Rain Dance"), Kornhaas Construction, Inc. ("Kornhaas") and Noble Energy, Inc. ("Noble") in the lawsuits styled as:

        a.      *Central Mutual Insurance Company a/s/o J.C. Yeatts, Inc.,  et al. Plaintiff, v. Kornhaas Construction, Inc. et al., Defendants*, Case No. CJ-2017-101 (Carter County, Oklahoma) ("*CMIC* lawsuit"); and

        b.      *Jose S. Romo & Maria Romo, husband and wife, and Jose Romo & Socorro Romo, Co-Trustees of The Romo Family Trust dated April 7, 2010, Plaintiffs, v. Kornhaas Construction, Inc., et al., Defendants*, Case No. CJ-2018-52 (Carter County, Oklahoma) ("*Romo* lawsuit") (collectively "Underlying lawsuits").

2.      The Underlying Lawsuits involve alleged property damage during the construction of a pocket park in Ardmore, Oklahoma.  Owners of properties adjacent to the pocket park have sued various entities after the collapse of a wall and damage to their buildings on or about December 6, 2016.

## I. THE PARTIES

3.     MUSIC is a New Jersey incorporated excess and surplus lines insurance company with its principal place of business in Branchville, New Jersey.

4.     Rain Dance is an Oklahoma corporation with its principal place of business in Ardmore, Oklahoma.

5.     Kornhaas is an Oklahoma corporation with its principal place of business in Ardmore, Oklahoma.

6.     Noble is an Oklahoma corporation with its principal place of business in Houston, Texas.

7.     Central Mutual Insurance Company ("CMIC") is an Ohio corporation with its principal place of business in Van Wert, Ohio.

8.     J.C. Yeatts, Inc. ("Yeatts, Inc.") is an Oklahoma corporation with its principal place of business in Ardmore, Oklahoma.

9.     John Yeatts ("Yeatts") is a citizen of Oklahoma.

10.     Jose S. Romo and Maria S. Romo, husband and wife, (the "Romos") are citizens of Oklahoma.

11.     Jose Romo and Socorro Romo, Co-Trustees of the Romo Family Trust dated April 7, 2010 (collectively, the "Romo Family Trust") are citizens of Oklahoma. The Romo Family Trust dated April 7, 2010, upon information and belief, was created under the laws of Oklahoma.

12.     Kirksey Architects, Inc. ("Kirksey") is a Texas corporation with its principle place of business in Houston, Texas.

## II. JURISDICTION

13.     This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of New Jersey. Defendants are citizens of states other than New Jersey. The amount in controversy exceeds $75,000.00, excluding interest and costs.

14.     An actual and justiciable controversy exists because the parties disagree whether MUSIC owes a defense and/or indemnity obligations to Rain Dance, Kornhaas or Nobel in the Underlying lawsuits.

## III. VENUE

16.     Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2) because Defendants and Parties in Interest reside within the district and the claims in the Underlying lawsuits arose within the district.

## IV. ALLEGATIONS IN THE *CMIC* LAWSUIT

17.     CMIC, Yeatts, Inc. and Yeatts filed a Second Amended Petition in the *CMIC* lawsuit, Exhibit 1, in which they make these allegations:

        a.     Noble or a company it retained engaged the defendants in the *CMIC* lawsuit to design and perform a construction project for a pocket park on property next to property owned by Yeatts, Inc. and insured by CMIC. During construction, Rain Dance allegedly dug a deep trench along a wall on Yeatts, Inc.'s

property.  The trench allegedly removed foundational support for the wall, which caused the wall to collapse and damage Yeatts' real and personal property.  [*CMIC* 2nd Amd Petition, ¶ 13 (Ex. 1)].

b.   CMIC paid Yeatts, Inc. $348,128.00 for building, contents, and business interruption damages allegedly sustained because of the incident described above.  The claim adjustment is ongoing.  CMIC alleges a subrogation interest to any right of recovery owned by Yeatts, Inc.  [*CMIC* 2nd Amd Petition, ¶ 1 (Ex. 1)].

c.   Yeatts, Inc. allegedly sustained business income loss, business personal property loss and building loss over the amount paid by CMIC.  [*CMIC* 2nd Amd Petition, ¶ 2 (Ex. 1)].

d.   Yeatts, the owner of Yeatts, Inc. allegedly sustained out-of-pocket losses over the amount paid by CMIC.  [CMIC 2nd Amd Petition, ¶ 3 (Ex. 1)].

e.   CMIC, Yeatts, Inc. and Yeatts allege the defendants in the *CMIC* lawsuit, including Rain Dance, Kornhaas and Noble, were negligent by:

1.   Operating Machinery and equipment in a manner they knew or should have known would cause the wall to collapse on or adjacent to the premises owned by the Romos;

2.   Violating safety rules that unnecessarily endangered members of the community;

3. Failing to select a contractor with the knowledge, skill, experience, personal characteristics, and equipment which a reasonable man would realize that an independent contractor must have to do the work which he contacted to do without creating unreasonable risk of injury to others;

4. Negligently selecting, hiring, training, supervising, or entrusting work which was inherently dangerous, or which posed an unreasonable risk to the public; and

5. Otherwise failing to act as a reasonable person would under the same or similar circumstances. [*CMIC* 2nd Amd Petition, ¶¶ 15 & 16 (Ex. 1)].

f. CMIC, Yeatts, Inc. and Yeats allege the defendants in the *CMIC* lawsuit, including Rain Dance, Kornhaas and Noble, performed work inherently or intrinsically dangerous or would, in the ordinary course of events, injure others if certain precautions are omitted but which may be performed safely if precautions are taken. [*CMIC* Petition, ¶ 17 (Ex. 1)].

g. CMIC, Yeatts, Inc. and Yeatts allege the defendants in the *CMIC* lawsuit, including Rain Dance, Kornhaas and Noble, breached implied warranties that their services were performed in a good and workmanlike manner. The *CMIC* defendants allegedly breached their implied warranties in

the same manners described under Paragraph 17(e)(1-5) of this Complaint. [*CMIC* 2nd Amd Petition, ¶ 18 (Ex. 1)].

      h.    CMIC, Yeatts, Inc. and Yeatts seek compensatory damages, including the repair/replacement of their property, contents, business interruption, and increased expenses, costs, attorneys' fees and pre- and post-judgment interest.  [*CMIC* 2nd Amd Petition, Prayer for Relief (Ex. 1)].

18.    Kornhaas has asserted a crossclaim against Rain Dance in the *CMIC* lawsuit for contractual indemnity under the "Standard Short Form Agreement Between Constructor and Subcontractor" dated May 18, 2016 ("Subcontract" attached as Ex. 2).  Rain Dance has asserted a crossclaim against Kornhaas for declaratory relief in the *CMIC* lawsuit.

19.    In the *CMIC* lawsuit, Noble has asserted crossclaims against (a) Rain Dance for contractual indemnity as an alleged third-party beneficiary of the Subcontract between Kornhaas and Rain Dance; (b) Kornhaas for contractual indemnity under Sections 3.18.1 and 10.2.5 of the Contract for Construction between Noble and Kornhaas ("General Contract"); and (c) Kirksey for contractual indemnity based on Section 8.1.4 of the Standard Form of the Agreement between Owner and Architect ("Architect contract").

20.    In the *CMIC* lawsuit, Kirksey has asserted crossclaims against (a) Rain Dance for contribution; (b) Kornhaas for contribution; (c) the Office of James Burnett, Inc. ("Burnett") for contribution and indemnity; (d) Noble for contribution

and indemnity; and (e) Cardinal Engineering, LLC ("Cardinal") for contribution and indemnity.

21.     MUSIC is defending Rain Dance and Kornhaas under a full reservation of its rights in the *CMIC* lawsuit.

### V. ALLEGATIONS IN THE *ROMO* LAWSUIT

22.     The Romos and the Romo Family Trust filed a Petition in the *Romo* lawsuit, Exhibit 2, in which they made these allegations:

a.     The Romos own property at 120 W. Main St. in Ardmore, Oklahoma.  The Romo Family Trust leased the property to Mujadin Bajrami at the time of the incident.  [*Romo* Petition, ¶ 1 (Ex. 3)].

b.     The acts and/or omissions of the defendants in the *Romo* lawsuit, including Rain Dance, Kornhaas and Noble, proximately caused an embankment failure which damaged real and personal property owned by the Romos.  Specifically, a trench dug by Rain Dance along the wall of the property owned by Yeatts allegedly caused the wall to collapse, which then caused a building on Yeatts, Inc.'s property to collapse.  The collapse of the Yeatts building allegedly caused damage to the Romos' real property, making it structurally unsound and unfit for safe use.  The tenant on the property, Mr. Bajrami, vacated the premises. [*Romo* Petition, ¶ 11 (Ex. 3)].

c.     The Romos and the Romo Family Trust allege substantively identical causes of actions and allegations against Kornhaas, Rain Dance,

Noble, Kirksey, James Burnett and Cardinal Engineering, as in the *CMIC* lawsuit. [*Romo* Petition, ¶¶ 13 – 16 (Ex. 3) and CMIC 2nd Amd Petition, ¶¶ 15-18 (Ex. 1)].

    d.    The Romos and the Romo Family Trust seek compensatory damages, including but not limited to the repair/replacement of their property, contents, loss of rental income, and increased expenses, costs, attorneys' fees and pre- and post-judgment interest. [*Romo* Petition, Prayer for Relief (Ex. 3)].

23.    Kornhaas has asserted a crossclaim against Rain Dance in the *Romo* lawsuit for contractual indemnity under their Subcontract, and Rain Dance has asserted a claim for declaratory relief against Kornhaas.

24.    In the *Romo* lawsuit, Noble has asserted crossclaims against (a) Rain Dance for contractual indemnity as a third-party beneficiary of the Subcontract between Kornhaas and Rain Dance; (b) Kornhaas for contractual indemnity under Sections 3.18.1 and 10.2.5 of the General Contract; and (c) Kirksey for contractual indemnity based on Section 8.1.4 of the "Architect contract".

25.    Kirksey, Noble and Rain Dance have received permission from the *Romo* court to file and serve a third-party petition against Yeatts, Inc., Yeatts and Punneo's Service, Inc. The precise claims to be asserted in the third-party petition are unclear.

26.     MUSIC is defending Rain Dance and Kornhaas under a full reservation of its rights in the *Romo* lawsuit.

## VI.  THE POLICY

27.     MUSIC issued Policy MP0042004003024, with a policy period of September 2, 2016 to September 2, 2017, to Rain Dance (the "Policy").  MUSIC and the Policy satisfy the requirements of the Unauthorized Insurers and Surplus Lines Insurance Act.  The Policy provides Commercial General Liability Coverage ("CGL Coverage"), Commercial Property Coverage, and Commercial Inland Marine Coverage.  Only the CGL Coverage is implicated by the issues in this Complaint. Kornhaas claims "Additional Insured" status under the CGL Coverage of the Policy. The Limit of Insurance under the CGL Coverage is $1,000,000.00 each occurrence with a Products/Completed Operations Aggregate Limit of $2,000,000.00.  Excerpts from the Policy are attached as Exhibit 4.

## VII.

### KORNHAAS IS AN "ADDITIONAL INSURED" UNDER THE CGL COVERAGE ONLY IF KORNHAAS IS FOUND LIABLE FOR PROPERTY DAMAGE CAUSED BY RAIN DANCE

28.     The Policy contains an Endorsement entitled "AI – Primary Non-Contributory – Waiver of Subrogation." [Policy, Form MUS 01 01 20128 0316 (Ex. 4)] (the "Additional Insured Endorsement").

29.     The Additional Insured Endorsement states:

### AI – PRIMARY NON-CONTRIBUTORY – WAIVER OF SUBROGATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Blanket Additional Insureds - As Required By Contract**

**A.**     Subject to the Primary and Non-Contributory provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured <u>only with respect to liability</u> for . . . "property damage" . . . caused, in whole or in part, by:

> **1.**     <u>Your ongoing operations</u>, "your product", or premises owned or used by you; [. . .]

[Policy, Form MUS 01 01 20128 0316, Page 1 of 2 (Ex. 4) (emphasis added)].

30.     Under the Additional Insured Endorsement, "additional insured" status is limited to liability for damage caused by Rain Dance's operations.   Likewise, the Subcontract limits "additional insured" status to liability for property damage to the extent the damage was caused by the negligent acts or omissions of Rain Dance.

31.     Paragraphs 11.8, 11.9 and 11.9.1 of the Subcontract states:

11.8  [KORNHAAS'S] LIABLITY INSURANCE  [Kornhaas] shall obtain and maintain its own liability insurance for protection against claims arising out of the performance of this Agreement, including without limitation, loss of use and claims, losses, and expenses arising out of [Kornhaas's] errors or omissions.

11.9.  ADDITIONAL LIABILITY COVERAGE [Kornhaas] <u>shall</u> require [Rain Dance] to purchase and maintain liability coverage, primary to the [Kornhaas's] coverage under subsection 11.8.

11.9.1  If required by section 11.9, the additional liability coverage required of [Rain Dance] shall be:

1. <u>X</u>   ADDITIONAL INSURED. [Kornhaas] shall be named as an additional insured on [Rain Dance's] CGL specified, for operations   and completed operations, but only with respect to liability for . . . property damage . . . <u>to the extent caused by the negligent acts or omissions of [Rain Dance]</u>, or those acting on [Rain Dance's behalf], in the performance of [Rain Dance's] Work for [Kornhaas] at the Project site.

[Subcontract, ¶ 11.9.1 (emphasis added) (Ex. 2)].

32.     The *CMIC* and *Romo* lawsuits allege Rain Dance, Kornhaas and Noble are liable for their own respective negligent acts or omissions, and under 23 O.S. § 15, Kornhaas cannot be liable for negligent acts or omissions of Rain Dance or Noble. Kornhaas is not an "Additional Insured" under the Subcontract or the Policy.

33.     The claims against Kornhaas in the *CMIC* and *Romo* lawsuits for strict liability and breach of implied warranty do not trigger "Additional Insured" status for Kornhaas under the Subcontract or the Policy. MUSIC owes no duty to defend or indemnify Kornhaas as an "Additional Insured" in the *CMIC* and *Romo* lawsuits.

34.     Even if Kornhaas is an Additional Insured, MUSIC owes no duty to defend or indemnify Kornhaas because the CGL Coverage does not cover the claims in the *CMIC* and *Romo* lawsuits under the provisions set out below.

## VIII.

### THE POLICY COVERS ONLY "OCCURRENCES"

35.     The CGL Coverage contains this language:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**LIABILITY**

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [ . . .]
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

[Policy, Form CG 00 01 04 13, Page 1 of 16 (Ex. 4)].

36.    The CGL Coverage contains this definition of "occurrence:"

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[Policy, Form CG 00 01 04 13, Page 15 of 16 (Ex. 4)].

37.    Testimony has been presented in the *CMIC* and *Romo* lawsuits that Rain Dance and/or Kornhaas knew or should have known that digging the trench below the foundation of the adjacent wall likely would lead to its collapse and the resulting damages sought by the plaintiffs in the *CMIC* and *Romo* lawsuits.  If true, the alleged "property damage" claimed by the plaintiff in the *CMIC* and *Romo* lawsuits were not caused by an "occurrence" as defined by the Policy.

38.     Claims for breach of implied warranty in the *CMIC* and *Romo* lawsuits cannot constitute an "occurrence" as defined by the Policy.

39.     MUSIC owes no duty to indemnify Rain Dance, Kornhaas or Noble in the *CMIC* and *Romo* lawsuits because the damages were not caused by an "occurrence."

## IX.

### THE EXPECTED OR INTENDED EXCLUSION PRECLUDES COVERAGE FOR THE PROPERTY DAMAGES SOUGHT IN THE CMIC AND ROMO LAWSUITS

40.     The CGL Coverage contains an exclusion for "Expected Or Intended Injury:"

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.   This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[Policy, Form CG 00 01 04 13, Page 2 of 16 (Ex. 4)].

41.     Testimony has been presented in the *CMIC* and *Romo* lawsuits that Rain Dance and/or Kornhaas knew or should have known that digging the trench below the foundation of the adjacent wall likely would lead to its collapse and the resulting damages sought by the plaintiffs in the *CMIC* and *Romo* lawsuits.   The Exclusion for "Expected Or Intended Injury" precludes coverage for property damages expected or intended by Rain Dance and/or Kornhaas.

41.    Claims for breach of implied warranty in the *CMIC* and *Romo* lawsuits are excluded under the Exclusion for "Expected Or Intended Injury."

43.    MUSIC owes no duty of indemnity to Rain Dance, Kornhaas or Noble in the *CMIC* or *Romo* lawsuits for expected or intended damages.

## X.

### THE CONTRACTUAL LIABILITY EXCLUSION PRECLUDES COVERAGE FOR DAMAGES SOUGHT IN THE *ROMO* AND *CMIC* LAWSUITS

44.    The Policy contains an exclusion for "Contractual Liability:"

**2.    Exclusions**

This insurance does not apply to:

[. . .]

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

[Policy, Form CG 00 01 04 13, Page 2 of 16 (Ex. 4)].

45.    The CGL Coverage carves out an exception to the Contractual Liability exclusion for "insured contracts:"

This exclusion does not apply to liability for damages:

[. . .]

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the . . . "property damage" occurs subsequent to the execution of the contract or agreement.   Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of . . . "property damage", provided:

**(a)**    Liability to such party for, or for the cost of,   that   party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in  which  damages  to  which  this insurance applies are alleged.

[Policy, Form CG 00 01 04 13, Page 2 of 16 (Ex. 4)].

46.    The Policy contains an Endorsement entitled "Amendment of Insured Contract Definition" applicable to the CGL Coverage.  [Policy, Form CG 24 26 04 13 (Ex. 4)] ("Insured Contract Endorsement").   The Insured Contract Endorsement states:

### AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

[. . .]

**f.**    That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . "property damage" to a third person or organization, provided the . . . "property damage" is caused, in whole or in part, by [Rain Dance] or by those acting on [Rain Dance's] behalf.  However, such part of a contract or agreement shall only be considered an "insured contract" to the extent [Rain Dance's] assumption of the tort liability is permitted by

law.  Tort liability means a liability that would be imposed by
law in the absence of any contract or agreement.

[Policy, Form CG 24 26 04 13, Page 1 of 1 (Ex. 4) (emphasis added)].

47.    In the *CMIC* and *Romo* lawsuits, Kornhaas makes a claim for contractual indemnity from Rain Dance under their Subcontract, and Noble seeks contractual indemnity from Rain Dance as an alleged third-party beneficiary of the Subcontract.

48.    The claims for contractual indemnity by Kornhaas and Noble are excluded by the Contractual Liability Exclusion unless and to the extent the Subcontract is an "Insured contract" as defined in the Insured Contract Endorsement.

49.    The Subcontract is not an "Insured contract."

50.    In the Subcontract, Rain Dance agreed to furnish and install landscaping, irrigation, landscape drainage, structural soils, decomposed granite and pavers for the pocket park.  [Subcontract, ¶ 1 and Ex. A to Subcontract (Ex. 2)].

51.    Paragraph 10 of the Subcontract states:

10.  INDEMNITY  To the fullest extent permitted by law, [Rain Dance]
shall indemnify and hold harmless [Kornhaas], [Kornhaas's] other
subcontractors, the Design Professional, [Noble], and their agents,
consultants, and employees (the indemnitees) from all claims for . . .
property damage other than to the Work itself that may arise from the
performance of the Subcontract Work, including reasonable attorneys'
fees, costs, and expenses, that arise from the performance of the Work,
but only to the extent caused by the negligent acts or omissions of
[Rain Dance], its subcontractors, or anyone employed directly or
indirectly by any one of them or by anyone for whose acts any of them
may be liable.  [Rain Dance] shall be entitled to reimbursement of any
defense costs paid above [Rain Dance's] percentage of liability for the

<u>underlying claim to the extent attributable to the negligent acts or omissions of the indemnitees</u>.

[Subcontract, ¶ 10 (emphasis added) (Ex. 2)].

52.     The Subcontract, read under 15 O.S. § 221, Oklahoma law, does not obligate Rain Dance to indemnify or defend Kornhaas or Noble for their own respective negligent acts or omissions.  The Subcontract obligates Rain Dance to defend and/or indemnify Kornhaas or Noble only if Kornhaas or Noble are found liable for Rain Dance's negligent acts or omissions.

53.     The *CMIC* and *Romo* lawsuits also allege Rain Dance, Kornhaas and Noble are strictly liable for alleged inherently or intrinsically dangerous activities. Kornhaas and Noble cannot be held liable for the acts or omissions of Rain Dance because the work performed by Rain Dance on the pocket park was not inherently or intrinsically dangerous.  In addition, the Subcontract does not require Rain Dance to indemnity Kornhaas or Noble for acts or omissions based in strict liability.

54.     The *CMIC* and *Romo* lawsuits also allege Rain Dance, Kornhaas and Noble breached their respective implied warranties that their respective services were performed in a good and workmanlike manner.  Kornhaas or Noble cannot be held vicariously responsible for Rain Dance's alleged breach of its own implied warranty.   And, the Subcontract does not require Rain Dance to indemnify Kornhaas or Noble for acts or omissions constituting breaches of implied warranties.

55.     Because the claims in *CMIC* and *Romo* lawsuits against Kornhaas and Noble are not within the scope of Rain Dance's indemnity obligations, the Subcontract is not an "Insured contract."

## XI.

### THE BUSINESS RISK EXCLUSIONS PRECLUDE COVERAGE FOR THE PROPERTY DAMAGES SOUGHT IN THE *ROMO* AND *CMIC* LAWSUITS

56.     The CGL Coverage has business risk exclusions for Damage To Property, Damage To Your product, Damage To Your Work and Damage to Impaired Property or Property Not Physically Injured implicated in the *CMIC* and *Romo* lawsuits.

57.     The CGL Coverage has this exclusion for Damage to Property:

**2.     Exclusions**

This insurance does not apply to:

[. . .]

**j.     Damage To Property**

"Property damage" to:

(5)     That particular part of real property on which you or an contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

[Policy, Form CG 00 01 04 13, Page 4 & 5 of 16 (Ex. 4)].

58.   The claims in the *CMIC* and *Romo* lawsuits may seek damages excluded by the Exclusion for Damage To Property.   MUSIC has no duty to defend or indemnify Rain Dance, Kornhaas or Noble for such damages.

59.   The CGL Coverage has this exclusion for Damage To Your Product:

**2.**      **Exclusions**

This insurance does not apply to:

[. . .]

**k.**      **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

[Policy, Form CG 00 01 04 13, Page 5 of 16 (Ex. 4)].

60.   The Exclusion for Damage to Your Product precludes coverage for damages in the *CMIC* and *Romo* lawsuits to the extent the damages within fit within the Exclusion.   MUSIC has no duty to defend or indemnify Rain Dance, Kornhaas or Noble in the *CMIC* and *Romo* lawsuits for such damages.

61.   The CGL Coverage has this exclusion for Damage to Your Work:

**2.**      **Exclusions**

This insurance does not apply to:

[. . .]

**l.**      **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

[Policy, Form CG 00 01 04 13, Page 5 of 16 (Ex. 4)].

62.     The Exclusion for Damage to Your Work precludes coverage for damages in the *CMIC* and *Romo* lawsuits to the extent the damages within fit within the Exclusion.  MUSIC has no duty to defend or indemnify Rain Dance, Kornhaas or Noble in the *CMIC* and *Romo* lawsuits for such damages.

63.     The CGL Coverage has this exclusion for Damage to Impaired Property:

> **2.     Exclusions**
>
> This insurance does not apply to:
>
> [. . .]
>
> **m.     Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that  has not been physically injured, arising out of:
>
> > (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or
> >
> > (2)     A delay or failure by [Rain Dance] or anyone acting on [Rain Dance's] behalf to perform a contract or agreement in accordance with its terms.  This exclusion does not  apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[Policy, Form CG 00 01 04 13, Page 5 of 16 (Ex. 4)].

64.   The Exclusion for Damage To Impaired Property or Property Not Physically Injured precludes coverage for damages in the *CMIC* and *Romo* lawsuits to the extent the damages within fit within the Exclusion.  MUSIC has no duty to defend or indemnify Rain Dance, Kornhaas or Noble in the *CMIC* and *Romo* lawsuits for such damages.

## XII.

### THE EARTH MOVEMENT EXCLUSION PRECLUDES COVERAGE FOR THE PROPERTY DAMAGES SOUGHT IN THE *ROMO* AND *CMIC* LAWSUITS

65.   The Policy contains an Endorsement called "Earth Movement Exclusion," applicable to the CGL Coverage, which states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EARTH MOVEMENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
[. . .]

In consideration of the premium charged, it is understood and agreed that this policy specifically excludes and does not extend to, or provide coverage or indemnity for, any claim of liability for . . . or property damage caused by, resulting from, attributable or contributed to or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from any operations of [Rain Dance] or on behalf of [Rain Dance] or any subcontractor of [Rain Dance].

All other terms and conditions of this policy remain unchanged.

[Policy, Form MUS 01 01 20080 0816, Page 1 of 1 (Ex. 4)].

66.   The Earth Movement Exclusion precludes coverage for the damages sought in the *CMIC* and *Romo* lawsuits because the alleged damages were caused or

aggravated by earth sinking or shifting allegedly resulting from the operations of Rain Dance.

67.     MUSIC owes no duty to defend or indemnity Rain Dance, Kornhaas or Noble in the *CMIC* and *Romo* lawsuits because the damages sought are excluded by the Earth Movement exclusion.

### XIII.  RESERVATIONS AND FUTURE PLEADING

68.     MUSIC reserves the right, as necessary to add claims and defenses that may become apparent as discovery and investigation proceeds.

WHEREFORE,   Plaintiff Mesa Underwriters Specialty Insurance Company prays for judgment declaring the rights and obligations of the parties, and in particular, for a declaration that it owes no duty to defend or indemnify Rain Dance, Kornhaas or Nobel in the *CMIC* and *Romo* lawsuits.

Dated:  September 24, 2018

By:     s/Kerry R. Lewis
John H. Tucker, OBA #9110
Jtucker@rhodesokla.com
Kerry R. Lewis, OBA #16519
klewis@rhodesokla.com
RHODES HIERONYMUS JONES
TUCKER & GABLE, PLLC
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173; (918) 592-3390 [fax]

***ATTORNEYS FOR PLAINTIFF MESA
UNDERWRITERS SPECIALTY
INSURANCE COMPANY***